UNITED STATES, Appellee

v.

DON JUAN ALLEN, Private, U.S. Army, Appellant

2 USCMA 266, 8 CMR 66

No. 1029

Decided March 5, 1953

LT. COL. George M. Thorpe, U. S. Army, and 1ST LT. Michael E. McGarvey, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Kenneth A. Howard, U. S. Army, for Appellee.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

On December 5, 1951, the appellant was tried by general court-martial for the offenses of rape and robbery in violation of Articles 120 and 122, respectively, of the Uniform Code of Military Justice, 50 USC §§ 714 and 716. He pleaded not guilty but was found guilty and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for five years. The convening authority approved; the board of review in the office of The Judge Advocate General of the Army affirmed, and the appellant petitioned this Court for review of the conviction. We granted the petition so that we might review the law officer's action in excluding certain evidence offered during the course of the trial. Of necessity, the facts must be set forth in detail.

At about 3:00 a.m. on October 6, 1951, a colored soldier appeared at the home of Lee Chon Soon and her mother, in Inchon, Korea. After gaining entry through a ruse, the soldier demanded money from Lee, and by menacing her with a pistol obtained some 60,000 or 70,000 won. Thereafter he forced Lee outside, raped her, and escaped.

At about 10:00 p.m. on the same date, the appellant was apprehended in the kitchen of Lee's home by military policemen who appeared pursuant to a request by Lee. Prior to the incident Lee and her mother had had business dealings with the appellant but the extent was limited to three or four occasions during July and August 1951. Notwithstanding the fact that the robbery and rape took place during darkness, that the assailant wore a mask which covered the lower part of his face, and that the only illumination present came from the moon, a small lantern in the house, and a flashlight held by the assailant, both Lee and her mother positively identified the appellant as the robber and rapist involved in this affair.

The appellant testified and denied that he was the assailant or that he was at the scene of the crime. He explained his presence at Lee's home on the following evening by saying that as he passed by Lee's home on the way from a nearby town to his unit, an air raid alert was sounded. He knew that he had to get off the streets to avoid being picked up. Because he knew Lee and her mother through prior business dealings, he sought entrance to their house. Lee answered his knock, but upon seeing him, fled screaming. His reason for being in the house in spite of Lee's conduct is best explained in the following quote: "I had no guilty feeling or anything . . . I stepped inside the door."

As part of his defense, counsel for accused sought to prove that Lee was examined by a Korean doctor on October 9, 1951, and was found to be suffering from syphilis; that appellant was examined by an Army doctor on December 5, 1951, and was found to be free from any venereal disease; that syphilis is a highly infectious disease; and that by expert testimony it would be shown that Lee's condition had reached such a stage that any person having contact with her would likely contract the disease. The law officer refused to admit this evidence, and this ruling is questioned here.

The two questions here involved are whether the evidence was competent and material and, if so, was its rejection prejudicial. The facts of venereal disease in the victim and its absence in the accused were offered to establish, inferentially, that it was unlikely that the accused was Lee's assailant. It is true that the strength of this inference depends directly upon the times when the various examinations were made, the preventive measures taken, as well as the nature of the disease. However, we are not concerned with weight of the evidence, but with its admissibility. It may be that if the evidence is so weak or so remote as not to support an inference then it would be inadmissible. On the contrary, if it has the substance to permit the drawing of an inference, it should not be rejected.

268

Examples of permissible inferences based upon the operation of organic natural laws are widespread. The validity of the inference from resemblance of features to paternity is fairly well established. State v. Johnson, 361 Mo 214, 234 SW2d 219 (1950); 1 Wigmore on Evidence, 3d ed., § 166. More specifically, in prosecutions for rape and carnal knowledge (so-called statutory rape) evidence of venereal disease in the accused, together with evidence that venereal disease developed in the victim shortly after the alleged assault, has long been considered sufficient to permit the jury to infer that the accused was probably the assailant. Swango v Commonwealth, 298 Ky 572, 183 SW2d 523, 524 (1944); Fields v. State, 203 Ark 1046, 159 SW2d 745, 746 (1942); Williams v. State, 224 Ala 6, 138 So 291, 292 (1931).

An inference that the accused was probably not the assailant might be proper. As stated in People v. Fong Chung, 5 Cal App 587, 91 P 105, 107 (1907): "if defendant had no venereal disease, and never had chancroids, it seems to us that it was very material as to whether or not the girl, with whom he is alleged to have had sexual intercourse, was suffering from venereal disease on the day of such alleged intercourse." The Fong Chung case was followed in People v. Ah Lean, 7 Cal App 626, 95 P 380, 381 (1908).

In this case the offer of proof was to the effect that the victim, Lee, was suffering from syphilis chancroids on October 9, 1951, three days after the offense was alleged to have occurred. This is the primary stage of the disease, and usually appears between the sixth and twelfth weeks from infection. 1 Gray's Attorneys' Textbook of Medicine, 3d ed., paragraph 33.11, page 480. If the victim was suffering from the disease three days after the incident, she was suffering from it on the date of the incident. Because the infection is nearly always transmitted through sexual intercourse, 1 Gray's Attorneys' Textbook of Medicine, 3d ed., paragraph 33.08, page 478, because syphilis is highly infectious, because a medical expert was prepared to testify that sexual contact with Lee would probably result

in contracting the disease, and because appellant was prepared to show that he was not suffering from any such disease, the inference properly may be drawn that accused did not have intercourse with Lee. Going one step further, if he did not have relations with Lee, she and her mother were mistaken in their identity and the accused was not the assailant. The fact that accused was not examined until some two months after the alleged assault does not render the results of that examination inadmissible because of remoteness. People v. Fong Chung, supra. Again that may go to the weight but not the competency, relevancy, or materiality. This is not to say that the members of the court-martial would have drawn the inference that the appellant was not Lee's assailant but they were entitled to hear and consider all competent and relevant facts which might shed light on that issue.

The staff judge advocate in reviewing the record concluded the law officer erred but reached a decision that the error was not prejudicial. That it was seems to us to be readily ascertainable. The issue of identity was clear and hotly contested. On the one hand the identification by Lee and her mother was positive. The fact that both Lee and her mother knew accused through prior business dealings lent credence to their identification which was made under difficult conditions. The fact that appellant was apprehended in the home late the same evening, together with the fact that Lee hastened to call the authorities immediately upon seeing accused at their door, served further to reinforce their identification.

Opposed to this were the obstacles blocking a positive identification on the night in question. The prosecution through its witnesses admitted that the offense occurred in the middle of the night, that the only illumination was provided by a small lantern and a flashlight held by the assailant, and that the assailant wore a mask which covered all but a small upper portion of his face. The appellant took the stand and denied that he was the perpetrator of these offenses. He offered a reasonable account of his activities prior to and at the time of the incident and a plausible explanation for his presence in Lee's house the following night. But appellant's version of his activities was uncorroborated, and an accused who testifies on his own behalf is never regarded as a disinterested witness. Ofttimes a slight amount of corroboration by a third party who has no interest in the outcome fortifies greatly an account given by the accused. While these matters cannot be measured with mathematical nicety there is a reasonable possibility that the physical facts offered by the defense, gathered as they were by disinterested parties, would be sufficient to alter the result reached by the members of the court-martial. United States v. Plummer (No. 235), 3 CMR 107, decided May 7, 1952; United States v. DeCarlo (No. 32), 1 CMR 90, decided December 28, 1951. We are convinced that the law officer's ruling was erroneous, and that the error was prejudicial to the appellant. The decision of the board of review must be reversed. The case is returned to The Judge Advocate General of the Army for a rehearing or such other action as is not inconsistent with this opinion.

Chief Judge QUINN and Judge BROSMAN concur.